UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD D. COLLINS,                        Case No. 18-12401

     Plaintiff,                           Laurie J. Michelson
v.                                         United States District Judge

COMMISSIONER OF SOCIAL                     Stephanie Dawkins Davis
SECURITY,                                  United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 17)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On August 8, 2018, plaintiff Bernard D. Collins filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Laurie J. Michelson referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying Collins' claim for

disability benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 13, 17).

### B.   Administrative Proceedings

Collins filed an application for supplemental security December 1, 2015, alleging disability beginning on November 19, 2015.  (Tr. 18).[1]  The claim was initially disapproved by the Commissioner on March 22, 2016.  *Id.*  Collins requested a hearing and on August 9, 2017, he appeared with counsel, before Administrative Law Judge ("ALJ") Ronald Herman, who considered the case *de novo*.  (Tr. 34-67).  In a decision dated February 8, 2018, the ALJ found that Collins was not disabled.  (Tr. 15-29).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 14, 2018, denied Collins' request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Collins was born in 1988 and was 27 years old on the date the application was filed.  (Tr. 28).  He has past relevant work as a fast food worker (light) and

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

machine operator (medium).  *Id.*  Collins alleges that he cannot work full-time because of his knee injury, ongoing pain, inability to effectively ambulate, and his inability to sit for very long.  (Tr. 37-38).  He also says that his medications cause nausea and that he has trouble focusing.  *Id.*  He lives with his father.  (Tr. 141).

Following the hearing, the ALJ considered the evidence within the framework of the five-step disability analysis and found at step one that Collins had not engaged in substantial gainful activity since his application date.  (Tr. 20).  At step two, the ALJ found Collins' major joint dysfunction and fracture of the left patella were "severe" within the meaning of the second sequential step.  (Tr. 20).  The ALJ found that Collins' obesity, uncomplicated mild asthma, and possible anxiety were not severe impairments.  (Tr. 20-21).  However, at step three, the ALJ found no evidence that his impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 21-22).  Thereafter, the ALJ assessed Collins' residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except only occasional performance of postural activities such as bending, stooping, crouching, and crawling; requires a cane to ambulate; and requires the option to alternate between sitting and standing every 30 to 60 minutes.

(Tr. 22-23).  At step four, the ALJ found that Collins was unable to perform his past relevant work.  (Tr. 27).  At step five, the ALJ denied benefits because he

3

found that jobs exist in significant numbers in the national economy that Collins

could perform and thus, he was not disabled through the date of the decision.  (Tr.

28-29)

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  *Id.*  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Listing 1.03

In the third step of the sequential analysis, to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Serv*s., 820 F.2d 161, 164 (6th Cir. 1987). To meet the requirements of a listed impairment, a plaintiff bears the burden of proof that all parts of a Listing's criteria are met. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 855 (6th Cir. 1986) (a claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at Step III). An impairment that manifests only some of the criteria in a Listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Collins argues that the ALJ erred when he concluded that he did not meet the requirements of Listing 1.03.  Listing 1.03 requires an individual to show "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. Pt. 404 Subpt. P App. 1 § 1.03.  Ineffective ambulation is defined in 1.00B2b as: "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. § 1.00B2b.  The regulations explain that, to ambulate effectively, individuals must be capable of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and "have the ability to travel without companion assistance to and from a place of employment or school."  *Id*. Examples of ineffective ambulation include: the inability to walk without the use of a walker, two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as

shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  *Id.*

Collins disputes the ALJ's conclusion that "nothing in the objective findings demonstrate the claimant is unable to walk a block on rough or uneven surfaces," as Dr. Nasr opined.  (Tr. 21).  Collins contends that the medical evidence supports Dr. Nasr's conclusion that he satisfies this example of ineffective ambulation. Collins points out that he underwent an open reduction and internal fixation in November 2015 and continues to have a nonunion of the patella and limited ambulation.  He also says that he had a second surgery in October 2017 to remove the hardware in his knee, patellectomy, and quadriceps advancement.  According to Collins, this is sufficient evidence to support a determination that he meets Listing 1.03.  Collins also asserts that the ALJ's discussion of the Listing and evidence is not sufficient such that meaningful judicial review is possible.

The Commissioner raises a host of arguments to support her position that the ALJ thoroughly reviewed the evidence and properly concluded that Collin's impairments did not meet or equal Listing 1.03.  (Dkt. 17, pp. 5-9, Tr. 21-22).  One argument raised by the Commissioner is particularly compelling: the ALJ found that the evidence did not support a finding of ineffective ambulation because there was nothing in the record that showed restrictions Collins' upper extremities in the manner prescribed by Listing 1.03.  Indeed, the ALJ concluded that the treatment

11

records and Dr. Nasr's opinion indicated that Collins could still walk up stairs while using his hand to hold onto a rail and he could climb up and down stairs on a bus.  (Tr. 21, 509).  The ALJ also found significant reports that Collins said he could perform activities like light to heavy housework, climbing stairs, and running short distances.  (Tr. 21, 407).

As set forth above, Listing 1.03 requires a claimant to prove "ineffective ambulation."  Ineffective ambulation is defined in 1.00B2b as: "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id*. § 1.00B2b.  Here, the evidence shows that Collins only required the use of a single cane and thus, both of his upper extremities were not limited by the use of a hand-held assistive device.  *See e.g.*, *Cousart v. Astrue*, 2012 WL 1865486, *7 (N.D. Ohio May 2, 2012), report and recommendation adopted, 2012 WL 1866594 (N.D. Ohio May 22, 2012) (Claimant could not satisfy Listing 1.03 where use of a single quad cane did not limit both of her upper extremities.); *Conley v. Colvin*, 2016 WL 867117, *6 (E.D. Ky. Mar. 2, 2016) (Claimant did not meet Listing 1.03 because, *inter alia*, he did not require a two-hand held assistive device for ambulation.); *Marquez v. Comm'r of Soc. Sec.*, 2019

WL 2251564, at *6 (E.D. Mich. May 1, 2019), report and recommendation adopted, 2019 WL 2247836 (E.D. Mich. May 24, 2019) ("Because Plaintiff can ambulate without the use of an assistive device that 'limits the functioning of both upper extremities,' the ALJ properly determined that he does not meet Listing 1.02 or Listing 1.03.").  Indeed, Dr. Nasr opined that Collins could take stairs while using one hand to hold a rail as well as climb up and down stairs on a bus.  (Tr. 509).  Regardless of whether Collins can meet other aspects of the Listing (i.e. reconstructive surgery), he cannot meet this part of the Listing, which is required. *See Zebley*, *supra*.  Accordingly, the undersigned finds no error in the ALJ's conclusion that Collins did not satisfy Listing 1.03.

            2.       Treating Physician Rule

Collins argues that the ALJ erred in selectively giving parts of Dr. Nasr's opinions limited weight.  Additionally, Collins argues that the ALJ's critiques of Dr. Nasr's opinions focus on the "supportability" and "consistency" factors set forth in the regulation, which the ALJ should only address if he declines to give the opinion controlling weight.  According to Collins, the ALJ did not engage in the first step – whether the opinion is entitled to controlling weight – contrary to the two-step inquiry set forth in *Gayheart*.

In response, the Commissioner argues that the ALJ explained in detail that Dr. Nasr's opinion regarding Collins' ability to walk on rough or uneven surfaces

or carry out routine ambulatory activities was entitled to little weight because it was internally inconsistent, was not supported by clinical findings in the opinion, and was inconsistent with the record as a whole, including Collins' non-compliance with treatment. (Tr. 22) As to Collins' assertion that the ALJ did not first consider whether Dr. Nasr's opinion was entitled to controlling weight before he went on to utilize the regulatory factors, the Commissioner contends that this argument is belied by the fact that the ALJ gave controlling weight to Dr. Nasr's opinion that Collins' impairments did not meet or medically equal Listing 1.03 (Tr. 21-22), and then went on to separately evaluate the remaining parts of the opinion. (Tr. 22, 26-27). Accordingly, the Commissioner maintains that the ALJ performed both steps of the evaluation process.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

As to Collins' claim that the ALJ erred by giving various weights to different parts of Dr. Nasr's opinions, the undersigned agrees with the Commissioner's observation that this argument finds no support in the law. Indeed, the law is to the contrary.  "An ALJ is not bound to either adopt or reject a physician's opinion in its entirety, but rather may accord differing weight to different portions of a medical opinion." *Zelin v. Colvin*, 2015 WL 5317147, at *11 (E.D. Mich. June 4, 2015), *report and recommendation adopted*, 2015 WL 5317154 (E.D. Mich. Sept. 11, 2015) (citing *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391–92 (6th Cir. 2004)).  Thus, there is no error merely because the ALJ assigned different weights to various parts of Dr. Nasr's opinions.

15

Next, the undersigned also agrees that the ALJ did not violate the two-part inquiry in *Gayheart* having discussed both a lack of clinical evidence to support and internal consistencies relating to certain of Dr. Nasr's opinions.  Further, to the extent that there may have been any error, the undersigned finds it harmless, as discussed in detail below.  "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The court found that the ALJ indirectly

attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff did not have a "diminished capacity for lifting/carrying." *Id*. And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight. *Id.* at 441. Further, the plaintiff's own statements undermined the doctor's opinion. *Id.*

Dr. Nasr, Collins' treating orthopedic physician, provided a Medical Source Statement on January 30, 2017 in which he opined that: Collins had a reconstructive surgery of a major weight-bearing joint (left knee); he was not able to walk a block at a reasonable pace on rough or uneven surfaces; he was able to use public transportation including climbing in/out of a bus and tolerating typical jostling on a bus; he could not carry out routine ambulatory activities including grocery and clothes shopping and banking; he is able to climb several stairs at a reasonable pace with use of a only a single hand rail; he needs a cane to ambulate; and he does not medically equal Listing 1.03. (Tr. 509-510).

The ALJ found some of Dr. Nasr's opinions to be well-supported and gave them controlling weight. The ALJ concluded that while Dr. Nasr's entire opinion was not entitled to controlling weight, the ALJ gave his opinion that Collins' impairment did not meet or equal a listing controlling weight because it was

consistent with the medical evidence in the record.  (Tr. 21-22).[2]  The ALJ

determined that Dr. Nasr's opinion that Collins needed a cane was entitled to great

weight because it was consistent with the medically determinable impairment and

the medical evidence of record.  (Tr. 22).  The ALJ determined that Dr. Nasr's

opinion that Collins could not walk a block at a reasonable pace on rough or

uneven surfaces and could not carry out routine ambulatory activities, such as

grocery shopping or banking, was entitled to little weight because Dr. Nasr's

limitations on Collins' ability to ambulate effectively were internally inconsistent

with his opinion that his impairments did not meet or medically equal Listing 1.03.

(Tr. 22, 509-510).  Further, the ALJ also found that those limitations were not

consistent with the rest of Dr. Nasr's opinion, where he indicated that Collins was

able to climb several stairs at a reasonable pace with the use of only a single hand

rail and could use standard public transportation that required him to climb in and

out of a bus and tolerate the typical jostling on a bus.  (Tr. 22, 509).  The ALJ also

considered that Dr. Nasr merely checked off boxes on a form and failed to include

"any supporting clinical findings in the space provided for such specific findings."

(Tr. 22, 509-510).  The ALJ added that he offered Collins' representative

---

[2] The undersigned already determined that the ALJ's listing analysis is supported by
substantial evidence, without regard to Dr. Nasr's opinion on Listing 1.03.  It is not entirely clear
that Dr. Nasr even opined about meeting the Listing.  At most, he opined that Collins did not
equal the Listing.  It is also notable that the entirety of section 1.00B2b is not contained in the
document completed by Dr. Nasr.  Thus, it is not clear that Dr. Nasr was apprised of all the
requirements for Listing 1.03.  (Tr. 509-510).

additional time to obtain more information from Dr. Nasr to support the assessed limitations, but the task went unexecuted.  (Tr. 22, 49-50).

In further support of his assessment of Dr. Nasr's opinions, the ALJ noted that Collins only had four office visits with Dr. Nasr between October 2016 and May 2017.  (Tr. 22, 332-333, 336-341).  During those office visits, the only positive findings were reduced range of motion and moderate tenderness along the medial and lateral aspects of the left knee.  (Tr. 22, 332, 336).  The examinations also indicated that Collins' sensation was grossly intact, he had 85 degrees of active flexion and 135 degrees of passive flexion, and his strength was four out of five on extension and five out of five with flexion of his left knee.  (Tr. 22, 332, 336, 338, 340-341).  While the ALJ acknowledged that Dr. Nasr mentioned that the CT scan showed a possible non-union of the fracture, the actual study was not included in the record (Tr. 336) and the x-rays in the record were normal with stable changes and intact screw fixation.  (Tr. 22, 324, 328, 334, 341).

The ALJ also took into account Dr. Nasr's notes in May 2017 that no other surgical procedures were required (Tr. 341) and thus, the ALJ found it "peculiar" that Collins had his hardware removed in October 2017.  (Tr. 22, 528).  Moreover, no later records were provided to the ALJ showing why the October 2017 procedure was performed or whether Collins' condition and limitations worsened. (Tr. 22).  The ALJ found that regardless of the October 2017 procedure, Collins

failed to follow Dr. Nasr's repeated recommendations to participate in physical therapy.  (Tr. 22, 333, 339, 341).  Finally, the ALJ concluded that based on Dr. Nasr's reports there appeared to be some improvement despite Collins' non-compliance with recommendations, and he stopped prescribing narcotic medication to Collins in October 2016.  (Tr. 22, 333).

The medical and other evidence outlined above provide substantial evidence in support of the ALJ's determination that many of Dr. Nasr's opinions are entitled to less than controlling weight.  Having discussed the medical and other evidence of record which contradicts and is inconsistent with Dr. Nasr's opinions, along with the internal inconsistencies in his opinions, the ALJ provided good reasons for the weight determinations.  While the ALJ did not specifically address the specialization in which Dr. Nasr practices, this omission is harmless.  As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id.* at 804-05.  As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.  As

demonstrated above, the goal of the regulation has been met here.  The reasons for

giving little weight to certain of Dr. Nasr's opinions are sufficiently clear and well-

supported by substantial evidence.

        3.     Light work

     According to Collins, the light work RFC formulated by the ALJ is not

supported by substantial evidence.  Collins argues that the ALJ violated 96-9p by

not considering the effect of his impairments, in particular his ambulation

difficulties, along with the fact that he requires a cane to ambulate.  Collins

contends that the definition of light work and the use of a cane are incompatible.

*See Love v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 893 (W.D. Mich. 2009) and *Jones*

*v. Comm'r of Soc. Sec.*, 2012 WL 967509 (W.D. Mich. 2012).  Further, Collins

contends that the ALJ's RFC for a reduced range of light work is not workable

because it is unlikely that he could perform a light job with a sit/stand option,

given that he cannot use both hands to carry objects while using a cane.

     The Commissioner's response is persuasive.  As set forth above, the ALJ

found that Collins could perform light work, except he could only occasionally

perform postural activities, such as bending, stooping, kneeling, crouching, and

crawling; he required a cane to ambulate; and he required the option to alternate

between sitting and standing every 30-60 minutes.  (Tr. 22-23).  As the

Commissioner observes, the ALJ's finding is supported by Dr. Nasr's opinion that

Collins required a cane to ambulate (Tr. 510), and the state agency physician's assessment that he was limited to occasional kneeling, crouching, and crawling. (Tr. 74).  Further, Collins himself reported that the reason he could not perform a job that allowed him to sit and stand at intervals of 30 minutes was his alleged low focus, but there was no evidence to support that restriction, a finding he does not challenge.  (Tr. 23, 38).  After finding that Collins' major joint dysfunction and fracture of the left patella were severe impairments, the ALJ extensively discussed his ability to ambulate at step three.  (Tr. 21-22).  The ALJ also considered evidence regarding his ambulatory abilities in determining his RFC, including his subjective complaints, records from the Pain Center, Dr. Karo's consultative examination report and opinion, Dr. Nasr's opinion, and the state agency physician's assessment.  (Tr. 23-27, 73, 407, 509-510, 513, 516, 520).  Reviewing the ALJ's analysis of the above evidence does not lead the Court to conclude that the ALJ failed to take into account Collins' ambulation activities.  And Collins has not identified any specific additional limitations or restrictions that should have been included in his RFC.  *See Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) (rejecting the plaintiff's challenge to the RFC assessment where he did not "specify any additional work- related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from his pain or mental impairments").

As explained in *Scott v. Comm'r of Soc. Sec.*, 2015 WL 4634077, at *6 (E.D.

Mich. July 6, 2015), adopted, 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015)),

whether and to what extent a social security claimant requires the use of a cane is

important because it could erode the occupational base.  The regulations provide

guidance on making this case-specific determination:

> **Medically required hand-held assistive device:** To find
> that a hand-held assistive device is medically required,
> there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or
> standing, and describing the circumstances for which it is
> needed (i.e., whether all the time, periodically, or only in
> certain situations; distance and terrain; and any other
> relevant information). The adjudicator must always
> consider the particular facts of a case. For example, if a
> medically required hand-held assistive device is needed
> only for prolonged ambulation, walking on uneven
> terrain, or ascending or descending slopes, the unskilled
> sedentary occupational base will not ordinarily be
> significantly eroded.
>
> Since most unskilled sedentary work requires only
> occasional lifting and carrying of light objects such as
> ledgers and files and a maximum lifting capacity for only
> 10 pounds, an individual who uses a medically required
> hand-held assistive device in one hand may still have the
> ability to perform the minimal lifting and carrying
> requirements of many sedentary unskilled occupations
> with the other hand. For example, an individual who
> must use a hand-held assistive device to aid in walking or
> standing because of an impairment that affects one lower
> extremity (e.g., an unstable knee), or to reduce pain when
> walking, who is limited to sedentary work because of the
> impairment affecting the lower extremity, and who has
> no other functional limitations or restrictions may still
> have the ability to make an adjustment to sedentary work

> that exists in significant numbers. On the other hand, the
> occupational base for an individual who must use such a
> device for balance because of significant involvement of
> both lower extremities (e.g., because of a neurological
> impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to
> consult a vocational resource in order to make a
> judgment regarding the individual's ability to make an
> adjustment to other work.

SSR 96-9p.  Just as in *Scott*, Collins' claims that his need for a cane entirely

precludes him from performing light work.  According to *Scott*, this is the case

because the ability to stand and walk during most of the workday is a critical

component of all light jobs.  And, according to the Commissioner's own policies,

light work entails "a good deal of walking or standing," which is the "primary

difference between sedentary and most light jobs."  SSR 83-10.  To be able to

frequently lift or carry objects weighing up to 10 pounds, which is required to

perform light work, an individual must be able to stand or walk, off and on, for

approximately six hours out of an eight-hour day.  *See Scott*.

In this case, however, the vocational expert identified 110,000 jobs

that Collins could perform despite needing a cane to ambulate.  (Tr. 59-60).  The

vocational expert also explained that the jobs he identified were standing positions

and did not require "any type of ambulating."  (Tr. 61).  The VE also found that

these jobs could be performed with the sit/stand option.  (Tr. 59-60).  The present

facts are distinguishable from *Jones v. Comm'r of Soc. Sec.*, 2012 WL 967509, *5

(W.D. Mich. 2012), where the Court rejected the ALJ's finding that the plaintiff could perform light work, which requires lifting up to 20 pounds, where the plaintiff's use of a cane could affect his ability to perform such work.  *See e.g.*, *Love v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 893, 907 (W.D. Mich. 2009) (court found that the ALJ's RFC determination was not supported by substantial evidence where the ALJ failed to address the illogical conclusion that a person can carry 20 pounds while using an assistive device; "[t]he Court does not doubt that Plaintiff can lift 20 pounds, but fails to comprehend how Plaintiff can carry 20 pounds if he requires a 'hand-held assistive device' to ambulate.").  In *Jones*, the ALJ neither mentioned nor accounted for the plaintiff's cane usage in the RFC he fashioned. The error was compounded by the fact that the hypothetical posed to the vocational expert also omitted any reference to the need for a cane to ambulate. Therefore, the case required remand so that the Commissioner "could decide whether plaintiff needs to use a cane for ambulation, and if so, whether plaintiff can perform light work while using this assistive device."  *Id*. at *5.

Here, the RFC expressly recognizes Collins' need for a cane to ambulate, and like the circumstances in *Scott*, the vocational expert has testified that Collins could perform a significant number of jobs in the light work category *despite* his need to use a cane to ambulate.  *See also Bates v. Comm'r of Soc. Sec.*, 2016 WL 4607566, at *3 (W.D. Mich. Sept. 6, 2016) (The Court concluded that there was a

difference between the need for a cane to stand versus to ambulate given that the Agency's definition of light work "notes that '[m]any unskilled light jobs are performed primarily in one location with the ability to stand being more critical than the ability to walk.'"). And Collins has not challenged the VE's conclusion in that regard.[3] Thus, the undersigned finds no error in the formulation of the RFC.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

---

[3] In the conclusion of Collin's brief, he suggests the alternative remedy of remanding the matter for the ALJ to obtain vocational expert testimony and to pose a "complete hypothetical." However, as noted, the record already contains VE testimony which takes into account plaintiff's cane usage. (Tr. 59). Thus, it is unclear what is meant by this request. To the extent Collins takes issue with any portion of the hypothetical posed, he has failed to direct the court to the precise issue. Consequently, the undersigned declines to address it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.").

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 30, 2019                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge

27